In the

# United States Court of Appeals
### For the Seventh Circuit

No. 25-2935

ALYSSA SCHUKAR and SCOTT OLSON,

*Plaintiffs-Appellants*,

*v.*

KENOSHA COUNTY, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for
the Eastern District of Wisconsin.
No. 2:23-cv-00880-JPS — **J. P. Stadtmueller**, *Judge.*

ARGUED MAY 14, 2026 — DECIDED JULY 21, 2026

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. On August 25, 2020, amid a state of emergency and intense unrest in southeast Wisconsin, photojournalists Alyssa Schukar and Scott Olson documented a protest outside the Kenosha County Courthouse. The scene bordered on chaotic. Some protestors launched fireworks and threw tear gas, rocks, and other objects at law enforcement officers. For their part, the officers deployed less-than-lethal measures to control the crowd and deter rowdy and volatile

participants. Amid these events, two foam baton rounds hit and injured Schukar and Olson. Litigation followed, with Schukar and Olson invoking 42 U.S.C. § 1983 and bringing First and Fourth Amendment claims against two officers involved in the crowd control—Waukesha County Deputy Steven Robakowski and Delafield Officer Ryan Jacobs. The district court entered summary judgment for the officers. We affirm.

**I**

On August 23, 2020, a City of Kenosha police officer shot and seriously injured Jacob Blake, a 29-year-old Black male. The incident received national attention, as it coalesced with preexisting racial tension across the country and the Black Lives Matter movement to spark widespread civil unrest in Kenosha County. The County swiftly declared a state of emergency and sought assistance from the Wisconsin National Guard.

The Kenosha County Courthouse became a center of attention. On the night of August 25, protestors assembled in front of the courthouse—along 56th Street and Civic Center Park and a grassy median separating the street and park from the courthouse. Meanwhile, members of a multijurisdictional law enforcement team called the Waukesha County Civil Disturbance Unit stationed themselves behind a temporary fence in front of the courthouse, as well as in its upper-floor windows and on the roof to monitor the crowd.

Tensions escalated around 8:30 p.m. While some protestors peacefully carried signs and chanted slogans like "Black Lives Matter," others resorted to violence. Protestors deployed mortar-grade fireworks and tear gas at the officers,

and threw water bottles, rocks, and bricks. Law enforcement in turn deployed crowd control measures like pepper balls and 40mm foam baton rounds to deter violent protestors. Some protestors then took cover in dumpsters and under umbrellas, with others using the dumpsters as shields as they advanced toward the courthouse.

Deputy Steven Robakowski and Officer Ryan Jacobs observed the crowd from two windows on the second floor of the courthouse. From that position they deployed foam baton rounds at protestors they claim engaged in threatening behavior toward law enforcement. Deputy Robakowski deployed four rounds from the second-floor window and Officer Jacobs five. Some rounds hit their intended targets, others missed. Later in the night, and after the line of law enforcement and crowd dispersed, the officers left the courthouse. In the southeast corner of Civic Center Park, they deployed three more rounds—two at individuals discharging tear gas and fireworks at law enforcement, and one at someone for reasons Officer Jacobs did not specify.

Alyssa Schukar and Scott Olson, photojournalists for the New York Times and Getty Images, covered the protest. Neither wore visible press clothing or credentials but both carried cameras and other equipment. Around 9:40 p.m., Schukar stood at the eastern end of the median facing the courthouse when a fast-flying object struck and injured her hand. In that same timeframe, Olson stood nearby on the eastern end of the median photographing violent protestors hiding by a dumpster when a similar object struck him in the ear, causing substantial bleeding. Neither Schukar nor Olson saw what hit them or observed an officer point a weapon toward them, but

both believe the objects were foam baton rounds intentionally deployed at them.

Schukar and Olson sued the only officers they could identify as having deployed foam baton rounds during the relevant timeframe—Robakowski and Jacobs. They alleged the officers intentionally struck them in retaliation for engaging in First Amendment-protected activity. They further maintain the officers violated the Fourth Amendment by using excessive force in circumstances where they, as photojournalists, posed no danger to anyone.

Discovery ensued and in time the district court entered summary judgment for the officers. As to the First Amendment claim, the district court determined that Schukar and Olson failed to show any retaliatory animus exhibited by the two officers toward the photojournalists. Instead, the court concluded that any reasonable jury would find that if the officers were indeed personally responsible for shooting at and striking Schukar or Olson, it was by accident while attempting to control violent protestors in the area. As for the excessive force claim, the court concluded that an intentional use of force that makes contact with an unintended target does not amount to seizure within the meaning of the Fourth Amendment. Having resolved both claims on the merits, the district court did not reach the officers' qualified immunity defenses.

Schukar and Olson appealed.

## II

We review a grant of summary judgment without deference to the district court, construing the facts in the light most favorable to Schukar and Olson and drawing reasonable in-

ferences in their favor. See *Bourke v. Collins*, 142 F.4th 918, 921
(7th Cir. 2025).

A

Deputy Robakowski and Officer Jacobs urge us to resolve
the appeal on factual grounds. Pointing to stipulations the
parties entered to facilitate the summary judgment proceed-
ings, the officers tell us that Schukar and Olson agreed to facts
making it impossible to find that either officer played a role
in causing the alleged injuries. Odd as that may seem, the of-
ficers have a point, for the factual stipulations place Schukar
and Olson on the eastern side of the median when struck by
what they believe were foam baton rounds. But other stipula-
tions, including diagrams showing who was where at the
time in question, make it impossible for Deputy Robakowski
or Officer Jacobs—from a second-floor window on the west
side of the courthouse—to have fired those rounds. Similarly,
the rounds the officers fired from the ground later in the even-
ing deployed in the opposite direction of Schukar and Olson.

Schukar and Olson urge us to move past the stipulations
and focus instead on countervailing evidence. And indeed,
rarely do we see parties agree to self-defeating facts, espe-
cially parties with able counsel who, as best we can tell,
pressed clear and consistent claims from the outset of the liti-
gation.

The point need not detain us, as we prefer to follow the
path traveled by the district court by proceeding to the merits.
Schukar and Olson had their day in court below and they will
on appeal too.

## B

The First Amendment prohibits government officials from retaliating against individuals for engaging in protected activity. See *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Retaliation claims employ a burden-shifting framework. A plaintiff establishes a prima facie case by showing that (1) he engaged in protected First Amendment activity, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor in the [defendant's] decision to take the retaliatory action." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (cleaned up). A plaintiff may prove the causation element with direct or circumstantial evidence such as "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [persons] in the protected group." *Id.* at 586 (cleaned up). But suspicious timing is rarely sufficient in and of itself to create an issue for trial. See *id.*

If a plaintiff makes out a prima facie case of retaliation, and the defendant then identifies "non-retaliatory grounds" that were "sufficient to provoke the adverse consequences," *Nieves*, 587 U.S. at 398, the burden returns to the plaintiff to show pretext, see *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Schukar and Olson fall short at the first step. Nobody disputes that they were engaged in protected activity, photojournalism, at the time of injury or that their injuries would discourage similar action. But even assuming Deputy Robakowski and Officer Jacobs saw and identified Schukar and Olson as members of the press covering the protests at the court-

house, we see no evidence that either officer intentionally targeted them, much less because of their protected activity.

When law enforcement uses force at a protest, we can infer animus from a deployment of force at peaceful protestors or observers located far from any legitimate target as well as repeated targeting of those individuals. See, *e.g.*, *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026) (confirming that evidence that officers "repeatedly targeted" journalists who stood "far from any protestors or bad actors" indicated retaliatory animus (citing *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 829 (9th Cir. 2020))).

The record shows that nothing like that occurred here. Recall that the protest took a hostile turn around 8:30 p.m. on August 25, 2020. Crowds of protestors launched fireworks and other objects at law enforcement. Deputy Robakowski and Officer Jacobs testified they deployed a limited number of foam baton rounds at protestors that they observed to be threatening law enforcement. And while a round struck each photojournalist, the undisputed facts show that Schukar and Olson were standing near legitimate and more likely targets—protestors who had just been launching fireworks at crowd-control officers stationed outside the courthouse. We see no evidence allowing a finding that Deputy Robakowski or Officer Jacobs targeted Schukar or Olson and not violent protesters.

Schukar and Olson resist this conclusion. They maintain we can infer that the officers singled them out because the rounds hit them while they were comingled among protestors. Not necessarily. Again, it is a victim's *lack* of proximity to others that may allow a finding that an officer went out of his way to target them. See *id.* But when the victim is *close* to

a legitimate target of the force, the inference of animus weakens. See *De Mian v. City of St. Louis*, 86 F.4th 1179, 1181–83 (8th Cir. 2023) (finding no animus toward a journalist where nothing indicated that the officer who deployed pepper spray at a crowd targeted the journalist at the edge of the spray zone).

Nor is the sole fact that allegedly excessive force impacted an innocent civilian usually enough to show animus where the person stood close to legitimate targets. See *Dickinson v. Trump*, 174 F.4th 634, 645 (9th Cir. 2026). Additional evidence of intentional targeting, such as warning a specific individual before using force, may alter the calculus. See, *e.g.*, *Sanderlin v. Dwyer*, 116 F.4th 905, 909, 911 (9th Cir. 2024) (affirming denial of qualified immunity on First Amendment retaliation claim where an officer struck a peaceful protestor with a foam baton round after threatening to "hit" him if he did not move). But again, nothing of the sort occurred here.

Schukar and Olson also point to discrepancies in the officers' use-of-force reports as evidence of animus. Both reports documented only rounds that struck their intended targets. And Deputy Robakowski reported only one of two people he successfully hit. In Schukar and Olson's view, the officers' failure to report all rounds deployed, including those that missed their targets, raises suspicion and calls their credibility into doubt.

But these discrepancies are not enough to show animus. Most can be explained. A few months after filing his report, for example, Officer Jacobs supplemented it with a narrative that stated the total number of rounds he deployed. Further, we see no requirement that the written reports had to itemize and account for all rounds fired. In short, the abbreviated police reports are not enough for a jury to reasonably infer that

the officers lied about targeting Schukar or Olson, much less that they targeted the photojournalists due to bias against the media. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat summary judgment] ….").

The press plays a critical role in documenting use of force by law enforcement during civil protests. Sometimes that work entails substantial risk, with this case being a good example. Schukar and Olson sustained meaningful injuries while doing their jobs. But that observation cannot shore up the evidentiary gaps in the First Amendment claim. The district court committed no error in entering summary judgment for Deputy Robakowski and Officer Jacobs on this claim.

C

That brings us to Schukar and Olson's Fourth Amendment claim. An allegation of excessive force requires a plaintiff to show that he has been seized and that the seizure was unreasonable. See *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). A seizure in turn requires "the use of force with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021) (cleaned up). We assess the reasonableness of a seizure under an objective standard that considers the totality of the circumstances from a reasonable officer's perspective. See *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The district court assumed Deputy Robakowski and Officer Jacobs deployed foam baton rounds with an intent to restrain rather than to disperse unruly, violent protesters. From there the court determined that no reasonable jury could find that the officers' rounds hit Schukar or Olson intentionally.

And the accidental nature of what transpired here, the district court continued, meant that Schukar and Olson were never seized within the meaning of the Fourth Amendment.

We question whether the conclusion follows. The Supreme Court in *Torres* suggested that force intentionally used to restrain may seize an unintended target. See 592 U.S. at 317 (observing that a seizure by force requires "use of force *with intent to restrain*" as determined by "whether the challenged conduct *objectively* manifests an intent to restrain"). But the Court did not definitively resolve the question and indeed there appears to be a circuit split on whether an intentional use of force seizes an unintended target. See, *e.g.*, *Kilnapp v. City of Cleveland*, 167 F.4th 909, 918–27 (6th Cir. 2026) (describing this unsettled law and holding that "[w]hen an officer intentionally shoots their firearm in circumstances that objectively manifest an intent to restrain, any individual struck by the bullet is thereby seized, regardless of whether that individual was the officer's specific intended target"), *petition for cert. filed* (U.S. July 9, 2026) (No. 26-58); *id.* at 922 n.5 (acknowledging a possible circuit split post-*Torres* and citing *Irish v. McNamara*, 108 F.4th 715, 720 (8th Cir. 2024) (considering a police-dog bite akin to the unintended target line of cases and therefore not a seizure but ultimately applying qualified immunity due to a lack of clearly established law)); *Hawatmeh v. City of Henderson*, 159 F.4th 591, 600 (9th Cir. 2025) (holding that an officer did not seize a hostage by accidentally shooting them when intending to hit the suspect instead).

The law is further complicated by varying approaches within the circuits to different subcategories of accidental targets. See *Kilnapp*, 167 F.4th at 922–27 (describing different and

inconsistent approaches to hostage, dog bite, vehicle passenger, misidentified, and unintended target cases).

Nor have we weighed in on this precise scenario. The government invokes *Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003), for its argument that force that impacts an unintended target is not a seizure. But *Bublitz* involved a very different situation. There the plaintiff's family members perished when a fleeing suspect's car collided with theirs after running over a tire-deflation device set up by law enforcement to stop the suspect. See *id.* at 486–87. We held that the officers had not seized the Bublitz family within the meaning of the Fourth Amendment because the officers' action in setting up the tire-deflation device was not "the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident." *Id.* at 489 (quoting *Campbell v. White*, 916 F.2d 421, 423 (7th Cir. 1990)). Put another way, the force that stopped the Bublitz family was an accidental consequence of different force applied by the officers with the intent to restrain. Here, however, Schukar and Olson claim the officers intentionally deployed the very force that injured them. *Bublitz* does not tell us whether force intentionally applied to restrain that directly meets an unintended target constitutes a Fourth Amendment seizure.

But we need not answer that question today to know that qualified immunity applies. See *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (explaining that an officer is entitled to qualified immunity under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time" (cleaned up)); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (per-

mitting courts to address the qualified immunity prongs in either order).

Given the uncertainty in the case law, much of which predates *Torres*, we can say with confidence that it was not clearly established in 2020 that an officer who intentionally deploys less-than-lethal munitions during a protest seizes an unintended target within the meaning of the Fourth Amendment. See *Kilnapp*, 167 F.4th at 928. In these circumstances, the law entitles Deputy Robakowski and Officer Jacobs to qualified immunity.

***

For these reasons, we AFFIRM the district court's entry of summary judgment for Deputy Robakowski and Officer Jacobs on Schukar and Olson's First and Fourth Amendment claims.